CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

NEAL C. HONG (ILBN 6309265)
Assistant United States Attorney

60 S. Market, Suite 1200
San Jose, California 95113
Telephone: (408) 535-5081
neal.hong@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 22-CR-00334 EJD |
| Plaintiff, | ) | THE UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | |
| RAMON CASTILLO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

After considering the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully

recommends that the Court sentence Defendant, Ramon Castillo, to 46 months of imprisonment.[1]

**BACKGROUND**

**A.    Offense Conduct Overview**

On September 13, 2021, a law enforcement confidential informant (CI) and Carlos Manuel Ruiz-

Montanez (Montanez) went to a location in Watsonville to meet Montanez's firearms supplier,

Defendant.  PSR 10.  Prior to September 13, 2021, CI purchased several firearms from Montanez.   PSR

7-9.

---

[1] The Government also considered factors raised by counsel for Defendant in Defendant's Reply
to Government Memo Re: Breach of Plea.

CI gave Montanez $4,100 for the firearms. Shortly after that, Defendant met the two and gave Montanez two firearms, (1) a 9mm Glock pistol with a machinegun conversion kit attached to it and (2) a privately manufactured firearm, also known as a "ghost gun," with a machine gun conversion kit attached to it.  PSR 10.

Defendant confirmed to CI and Montanez that the firearms were fully automatic.  *Id*.  Indeed, ATF determined that both firearms were machineguns.  *Id*.  Montanez then handed Castillo the $4,100 and Defendant left.  *Id*.  CI then gave Montanez $300 for arranging the transaction.  *Id*.

On September 30, 2021, Defendant sold another ghost gun and two pistols to CI for $3,700. PSR 11.  Defendant then told CI that he had a connection in San Antonio, Texas and would hopefully soon have a bunch of "AKs."  *Id*.  He stated that his associates had kits to convert the firearms to fully automatic.  *Id*.  Defendant also told CI that next year he would be able to get CI a "shit ton" of "1911 handguns" for $1,000 each.  *Id*.

**B.    Firearms and firearm related items found during Defendant's arrest**

On November 4, 2021, law enforcement arrested Defendant at his residence, which was owned by his mother.  *See* PSR 4.  The residence also served as a daycare for children.  Doc. 6 (Gov't detention memorandum); *see also* PSR 36.  The daycare was located at the rear of the residence.  *Id*.  The room closest to the daycare was Defendant's unlocked bedroom.  *Id*.  Law enforcement found numerous firearms and ammunition in Defendant's bedroom.  *Id*.   Law enforcement also found a Dremel tool on the floor. *Id*.   According to ATF, a Dremel tool is a machine that is often used to obliterate serial numbers on firearms. *Id*.

 Agents found an unsecured fully automatic loaded machinegun pistol on Defendant's bed, which was merely covered by a blanket.  *Id*.  The window by Defendant's bed overlooked the children's play yard.  *Id*.  Agents also found a long gun at the base of Defendant's bed in an unlocked green range bag and numerous containers of unlocked ammunition.  *Id*.

Agents also searched a shed to the rear of the home.  *Id*.  Agents found evidence of firearms manufacturing.  *Id*.  Agents found a drill press, a vice, finished assault rifle lower receivers, and a "lightning link."  *Id*.  According to ATF, a lightning link is a piece of metal that is inserted inside a firearm lower receiver that allows it to fire fully automatically. *Id*.

An ATF agent asked Defendant's mother if she was expecting more children that day, and she informed the agent that she was expecting about five more children that day. *Id*. In total, ATF seized over 40 firearms from Defendant's residence, including assault rifles, short-barrel rifles, shotguns, handguns, ghost guns, a machinegun, and over 10,000 rounds of ammunition. *Id*.

**C.  Court proceedings**

A one-count Information was filed charging Defendant with a violation of 18 U.S.C. § 922(o), Illegal Possession and Transfer of Machineguns. PSR 1. Montanez was separately charged with violations of 18 U.S.C. § 922(o) and 18 U.S.C. § 922(a)(1)(A), Dealing in Firearms Without a License.

On November 10, 2021, a magistrate judge released Defendant on conditions. Doc. 10. As part of his release conditions, Defendant was not to possess any firearm, destructive device, or other dangerous weapon and he was not to use or possess any narcotic or other controlled substance without a legal prescription. *See id*. On March 18, 2024, this Court sentenced Montanez to 38 months of imprisonment followed by 3 years of supervised release. *United States v. Montanez*, 22-CR-00322-EJD, Doc. 49. On March 27, 2023, Defendant pled guilty, pursuant to a plea agreement, to the Information. Doc. 32.

On November 17, 2025, the Government filed a memorandum in support of its claim that Defendant breached his plea agreement. Doc. 62. In its memorandum, the Government alleged that Defendant possessed firearms and cocaine in violation of his release conditions. *Id*. On December 10, 2025, the Court held an evidentiary hearing and found that "the plea agreement has been breached by the Defendant and that the agreement is no longer binding to Government." Doc. 67.

**ARGUMENT**

**A.  The nature and circumstances of the offense and the Defendant's criminal history**

The nature and circumstances of the offense are serious. Defendant sold machineguns and other firearms. "[M]achineguns are dangerous weapons." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016). Machineguns are "inherently dangerous" because it is "primarily [a weapon] of war and [has] no appropriate sporting use or use for personal protection." *Id*.

Selling dangerous weapons indiscriminately is particularly dangerous because the illegally trafficked firearms could have ended up in the hands of gang members or drug traffickers, which could

put the public at risk of harm. *See United States v. Cavera*, 550 F.3d 180, 204 (2nd Cir. 2008) (Raggi, J., concurring) (recognizing guns as tools-of-the-trade for organized crime families, numerous large-scale narcotics enterprises, and street gangs); *see also United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) ("Firearms are known tools of the trade of narcotics dealing because of the danger inherent in that line of work."). Fortunately, the ATF was able to obtain these firearms before they could end up in criminal hands. Defendant has no prior criminal convictions.

### B. Defendant's conduct is more aggravating than Montanez's conduct thus warrants a higher sentence

Defendant and Montanez share many similarities. They both sold machineguns and other firearms, had no prior criminal convictions, and were in their 20s when they committed the crimes. Court sentenced Montanez to 38 months of imprisonment. However, the Government submits that the Court should sentence Defendant to 46 months because Defendant's conduct is more aggravating and he has demonstrated that he is likely to recidivate.

Defendant was a higher-level firearms dealer than Montanez. It was Defendant who supplied Montanez with machineguns, and perhaps other firearms, to sell to CI and likely others. Defendant appeared to be well connected with others involved in illegal firearms trafficking. He told CI that had connections to get a bunch of "AKs," had associates with kits to convert the firearms to fully automatic, and would be able to get the CI a "shit ton" of "1911 handguns" for $1,000 each.

He also appeared to be manufacturing and altering firearms. During the search of his residence after his first arrest, agents found a drill press, a vice, finished assault rifle lower receivers, a lightning link, and a Dremel tool. The search also revealed Defendant's reckless behavior in storing and handling firearms. Defendant's bedroom, which was near the daycare, was not locked. The window by Defendant's bed overlooked the children's play yard. Agents found an unsecured fully automatic loaded machinegun pistol on Defendant's bed, which was merely covered by a blanket. A child could have easily wandered into that room and easily found a fully loaded fully automatic machine or other dangerous firearms and ammunition. Defendant's reckless behavior was a tragedy waiting to happen.

Finally, Defendant's behavior while on release further supports a 46-month sentence. Defendant, while on pretrial release for firearms offenses—possessed firearms and ammunition. He also

resided at his prior residence even though the magistrate judge ordered that he live at a different location.  Not only was this a violation of his conditions of release, but it was also a violation of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).  On February 13, 2025, local law enforcement found firearms and ammunition in the same room ATF found firearms and ammunition during Defendant's first arrest.  This was well after he pled guilty to the instant offense (March 27, 2023), and this Court informed him that he was not to possess firearms during the change of plea hearing.

Furthermore, Defendant's explanation of the discovery of the firearms on February 13, 2025, defies credulity.  Although Defendant did admit awareness of the firearms and conceded the breach, he denies that the firearms found on February 13, 2025, were "new guns."  Rather, he insinuated that the ATF failed to adequately search a small closet that could barely fit a human being, failed to look in a backpack in that tiny closet, and failed to open a drawer in the room.

The Court heard testimony from ATF Resident Agent in Charge Richelle Caballero Nelson.  She testified about the search procedures and how Defendant's bedroom was searched.  Based on that testimony, it would be extremely unlikely, bordering on impossible, for the ATF to somehow miss three firearms in a tiny closet inside a bag and a firearm in a drawer completely in plain sight.  ATF did not bungle a straightforward search of a bedroom—Defendant obtained 4 firearms and ammunition in direct defiance of the courts and the law and placed them in a bedroom he was ordered not to reside in.

Defendant's absurd explanation is troubling because it demonstrates a failure to fully accept responsibility and also shows a willingness to fabricate a story, even one as weak as this, to try to escape responsibility.  This behavior along with ignoring the conditions placed by the magistrate judge, and admonitions from this Court to not possess firearms demonstrates that Defendant lacks respect for law and will likely reoffend.  A sentence of 46 months is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

//

//

//

//

//

## CONCLUSION

For the reasons stated above, the United States respectfully recommends that the Court sentence Defendant to 46 months of imprisonment, followed by 3 years of supervised release.

Dated: February 2, 2026

<div style="margin-left:50%">

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


/s Neal Hong
NEAL C. HONG
Assistant United States Attorney

</div>